Bruce Peaceman and Victoria Peaceman, his wife, Petitioners *v.* Orlando P. Tedesco, M.D., Edwin W. Shearburn, III, M.D., The Lankenau Hospital and G.D. Searle & Company, Respondents.

Bruce Peaceman and Victoria Peaceman, his wife, Petitioners *v.* Orlando P. Tedesco, M.D., Edwin W. Shearburn, III, M.D., The Lankenau Hospital, Searle & Co. and G.D. Searle & Company, Respondents.

Submitted on briefs, April 11, 1980, to Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Martin Heller*, attorney for appellants.

*James J. McEldrew*, with him, *Joseph H. Foster* and *Justin J. McCarthy*, of counsel *White and Williams*, for appellees.

OPINION BY JUDGE ROGERS, May 28, 1980:

The appellants, Bruce Peaceman and Victoria, his wife, commenced a malpractice action against a number of health care providers, including the surgeon who operated on Mrs. Peaceman, named in their complaint as Edwin W. Shearburn, III, M.D., by filing their complaint with the Administrator of Arbitration Panels for Health Care pursuant to the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §1301.101 et seq. They averred, *inter alia*, that Victoria Peaceman consulted Edwin W. Shearburn, III, M.D. in connection with symptoms relating to her right breast; that Edwin W. Shearburn, III, M.D. told Victoria Peaceman that he would perform a biopsy on the right breast; that Edwin W. Shearburn, III, M.D. did not tell her that if he found a malignancy he would immediately perform

a right modified radical mastectomy; and that Edwin W. Shearburn, III, M.D., having found a malignancy, immediately performed a right modified radical mastectomy without informing her beforehand. The plaintiffs assert that this was negligent conduct.

Edwin W. Shearburn, III, M.D. was a resident at Lankenau Hospital, Montgomery County. His father, Edwin W. Shearburn, Jr., M.D. was a surgeon and was at the times involved in this matter the Chief of the Division of Surgery at Lankenau. It was the father, Edwin W. Shearburn, Jr., M.D. who talked with Mrs. Peaceman and who performed the surgery. Service of the complaint was made by sending it certified mail to the address, including room number, at Lankenau of the father, Edwin W. Shearburn, Jr., M.D. A receipt for its delivery was signed by Edwin W. Shearburn, Jr., M.D.'s secretary or receptionist, one Liz Norman.

An attorney-at-law entered an appearance for Edwin W. Shearburn, III, M.D. and an answer was filed by Edwin W. Shearburn, III, M.D. in which he denied that he "performed the surgery as alleged" or that he "performed any of the acts averred" and in which he averred that "he did not make any warranties as averred". That answer was filed about ten months before the statute of limitations ran on the appellants' claims.

About five weeks after the statute of limitations ran, Edwin W. Shearburn, III, M.D. filed a Motion for Summary Judgment, alleging that it was his father, Edwin W. Shearburn, Jr., M.D., who performed the mastectomy on Mrs. Peaceman and that he, Edwin W. Shearburn, III, M.D. did not see or participate in the care of Mrs. Peaceman until after the operation had been performed by his father.

The Peacemans, faced with Edwin W. Shearburn, III, M.D.'s Motion for Summary Judgment, filed a

Motion to Correct Name of Party pursuant to Pa. R.C.P. 1033, to change the name of the defendant from Edwin W. Shearburn, III, M.D. to Edwin W. Shearburn, Jr., M.D. In their Motion the plaintiffs averred, in addition to the fact that they had intended to name as the defendant the person who performed the operation, that Edwin W. Shearburn, III, M.D.'s name appeared in the medical records on Mrs. Peaceman's discharge summary. In answer to the latter allegation, Edwin W. Shearburn, III, M.D. answered that his name also appeared on at least three progress notes.

The Administrator overruled the plaintiffs' Motion to Correct Name on the ground that to do so would impermissibly bring a new party on the record as a defendant after the running of the statute of limitations. He granted Edwin W. Shearburn, III, M.D.'s Motion for Summary Judgment because it was undisputed that he had not performed the operation. The plaintiffs below have appealed, contending that the Administrator's refusal to grant their Motion to Correct Name, the effect of which was to put them out of court, *see Saracina v. Cotoia,* 417 Pa. 80, 82, n. 3, 208 A.2d 764, 766, n. 3 (1965), was error.

The Administrator based his conclusion upon the leading case of *Saracina v. Cotoia, supra.* That case announces the recognized test for deciding whether a party may amend his pleading so as to correct the name of a defendant after the statute of limitations has run. The test is whether the right party was sued but under a wrong designation, in which case the amendment should be allowed, or whether a wrong party was sued and the correction would simply substitute another and distinct party, in which case the amendment should not be allowed. The facts in *Saracina v. Cotoia, supra,* in which the Supreme Court by four to three decision upheld a trial court

decision refusing to permit an amendment, were as follows: Saracina, the plaintiff in a trespass case arising from a motor vehicle accident, named as the defendant "Anthony Cotoia, a minor" and alleged that Anthony Cotoia owned and operated the motor vehicle involved in the accident. Suit was commenced very shortly before the statute of limitations would have barred it. Apparently just before or just after the statute had run, Anthony Cotoia filed an answer saying he was not a minor and that while he owned the motor vehicle in question he was not the driver but that his son, Robert Cotoia, was the driver and that the son was driving on his own business and for his own pleasure. About six months after the answer was filed and therefore necessarily about six months after the statute had run, the plaintiff sought to amend the complaint to change the designation of the defendant from Anthony Cotoia to Robert Cotoia, a minor. Justice (later Chief Justice) BENJAMIN R. JONES, who wrote the court's opinion, acknowledged that there were strong indications in the case that plaintiff intended to bring suit against the operator of the vehicle, Robert Cotoia, but nevertheless concluded that the amendment desired would bring in a new and distinct party to the action, citing as authority *Girardi v. Laquin Lumber Co.*, 232 Pa. 1, 81 A. 63 (1911), where it was held that a pleading naming as defendant "Laquin Lumber Company, a corporation" could not be amended so as to name as defendant Laquin Lumber Company, a partnership, composed of six named individuals, because this would bring new parties, the individual partners, on the record. Justice JONES continued, however, as follows:

> If the *right party* was in court as the result of service of process and it was merely his or its designation which was sought to be changed, we would be prone to permit the amendment.

*See* Powell v. Sutliff, 410 Pa. 436, 189 A.2d 864. However, in the case at bar service was made on 'Anthony Cotoia the within named defendant, ... by handing a true and attested copy ... to his father an adult member of his household, at his place of residence ...' The return in no way indicates that Robert Cotoia was properly served and is now before the Court. (Emphasis in original.)

417 Pa. at 84, 208 A.2d at 766.

We think that the facts of this case causes it to fall, not within the holding of *Saracina v. Cotoia, supra,* but within the dictum just quoted. Since the subject matter of this case was the surgery performed on Mrs. Peaceman, it was certain that the surgeon, Edwin W. Shearburn, Jr., M.D., was intended to be sued and indeed this is conceded by his son whose name appears as defendant on the complaint. Section 503 of the Health Care Services Malpractice Act, 40 P.S. §1301.503 requires that service of complaints be made personally or given by certified mail. The plaintiffs' attorney sent the complaint, mistakenly naming the son as defendant, to the surgeon's office at Lankenau Hospital and it was there received and receipted for by the surgeon's secretary or receptionist. It is true that the envelope bearing the complaint was addressed to Edwin W. Shearburn, III, M.D., and there are assertions in the record that Lankenau residents "on occasion" got mail at the Chief of the Division of Surgery's office. Nevertheless, the complaint was served by certified mail sent to the father's office, and it was there received by the surgeon's secretary or receptionist. Dr. Shearburn, Jr., the intended defendant, obviously had knowledge that he performed the surgery in question and of the suit. The case is therefore, we believe, on all fours with *Wright v. Eureka Tempered Copper Company,* 206 Pa. 274, 55 A. 978 (1903). There the

defendant was named as Eureka Tempered Copper Company, an enterprise which had failed three years before the injuries on which the suit was brought were sustained, and which still existed but without doing business. A new company called Eureka Tempered Copper Works succeeded to the property and business of the Eureka Tempered Copper Company. Service was made on the manager of the Copper Works but it was returned as served on the manager of the Copper Company. The Supreme Court held that the record might be amended after the statute ran to substitute the word Works for Company in the defendant's name, reasoning:

> Statutes of amendment are liberally construed to give effect to their clearly defined intent to prevent a defeat of justice through a mere mistake as to parties or the form of action. Amendments however will not be allowed to the prejudice of the other party, where the statute of limitations has run, by introducing a new cause of action or bringing in a new party.... A party whose name it is asked to amend must be in court. If the effect of the amendment will be to correct the name under which the right party was sued, it should be allowed; if its effect will be to bring a new party on the record, it should be refused after the running of the statute of limitations.

> In this case there is no dispute as to what was intended and what was actually done in bringing the suit. The plaintiff had never worked for the copper company. His counsel knew of the existence and the history of both companies, that one had gone out of business and had been succeeded by the other. He intended to draw a precipe for a writ against the copper works, and by mistake wrote the word 'Com-

pany' instead of 'Works.' He served the right party, the manager of the copper works, and thus brought that company into court, but under a wrong name. The mistake in bringing the suit was in the name of the party actually summoned, and not in suing the wrong party, and the amendment should have been allowed.

206 Pa. at 276, 55 A. at 978-79.

We believe also that the facts of this case bring it within the rule of *DeRugeriis v. Brener,* 237 Pa. Superior Ct. 177, 348 A.2d 139 (1975), *appeal dismissed per curiam,* 471 Pa. 103, 369 A.2d 1215 (1977), that the statute of limitations may be tolled if there is active concealment of the true name of the person intended to be sued occurring during the period in which the statute was running. The facts in *DeRugeriis v. Brener, supra,* were that after a motor vehicle accident in which the plaintiff, William DeRugeriis, Jr., was involved with Stephen Brener, son of Herbert Brener, a person at the scene of the accident noted on his scratch pad the name of Herbert Brener and of his insurance company and gave the paper to DeRugeriis, Jr. Thereafter there was communication between Herbert Brener, father of Stephen, and the plaintiff's father, William DeRugeriis, Sr., and between the senior DeRugeriis and the Breners' insurance carrier. During this period none of the DeRugeriis' family were informed as to the true identity of the driver of the Brener motor vehicle. Suit was brought against Herbert Brener who, after the statute of limitations had run, filed an answer revealing that Stephen Brener was the driver. The Superior Court, with two Judges dissenting, held that the complaint could be amended to reflect Stephen Brener as the defendant. Judge VAN DER VOORT wrote for the court as follows:

In the case before us, appellee did not supply appellant-driver with the correct information as

to his name; nor did his father; nor did his insurance carrier. Either intentionally or not, appellee, original defendant Herbert Brener, and their agents actively misled appellants as to who the real driver was until after the statute of limitations had run. The true identity of the driver was withheld until defendant answered the original complaint. We therefore conclude that the statute of limitations was tolled as to Stephen Brener because of the active concealment of the true name of the driver, which occurred during the period in which the applicable statutory period was running.

237 Pa. Superior Ct. at 180, 348 A.2d at 140.

We hasten to repeat that in the case at bar the named defendant, Edwin W. Shearburn, III, M.D., in an answer filed about ten months before the statute of limitations ran alleged that he did not perform "any of the acts averred in the plaintiffs' complaint". However he also pleaded in the answer that "[I]t is specifically denied that the defendant, Edwin W. Shearburn, III, M.D., performed the surgery *as alleged*" and that "Edwin W. Shearburn, III, M.D. did not make any warranties [of treatment in accordance with medical standards in the community] *as averred.*" The phrases as alleged and as averred just emphasized are susceptible to a reading that the surgery was performed by the pleader but not as alleged and that warranties were made by the pleader but not as averred, rather than as a denial that the pleader had performed the surgery or made the warranties, but that someone else had. Further, counsel acting for Edwin W. Shearburn, III, M.D. while the statute of limitations was running and in apparent defense of the action against Edwin W. Shearburn, III, M.D. took Mrs. Peaceman's deposition, filed a Conciliation Conference Memorandum, attended a Conciliation Conference and filed additional new

matter and a cross-claim against another defendant. Only after a statute had run did Edwin W. Shearburn, III, M.D. disclose in his Motion for Summary Judgment the following information appearing in the affidavit accompanying his Motion:

4. Dr. Edwin W. Shearburn, Jr., is the father of Edwin W. Shearburn, III, M.D.

5. That Edwin W. Shearburn, III, M.D. was a resident in the Department of Surgery at Lankenau Hospital during the time Mrs. Peaceman was an in-patient on the dates referred to above, and as a resident he did participate in the care of Mrs. Peaceman. However, Edwin W. Shearburn, III, M.D., did not perform the operation which is the subject matter of plaintiffs' complaint, rather such operation was performed by Dr. Edwin W. Shearburn, Jr., which operation was done on 6/28/76 and consisted of excision biopsy, frozen section, and right modified radical mastectomy.

6. Edwin W. Shearburn, III, M.D., did not participate in the care of the wife-plaintiff, Mrs. Peaceman, until 7/1/76, he never treated or saw Mrs. Peaceman at any time prior to that date, he was not present at the operation performed on 6/28/76, he did not participate in any way in the operation, he did not participate in any way in explaining any of the operative procedures to Mrs. Peaceman and had nothing at all to do with the medical care and treatment of Mrs. Peaceman until 7/1/76, three or four days before she was discharged from Lankenau Hospital on 7/4/76.

Edwin W. Shearburn, III, M.D.'s answer, whether intentionally or not, certainly lacks the certainty and clarity of his Motion for Summary Judgment filed after the statute of limitations had run; all of his counsel's

actions after the answer was filed were consistent with a defense on the merits of a malpractice suit defendant. We believe that there was concealment in this case as active as that in *DeRugeriis v. Brener, supra,* and that, as in that case, the statute of limitations was tolled.

For these reasons we reverse the order below.

### ORDER

AND NOW, this 28th day of May, 1980, the order of the Administrator of Arbitration Panels denying the appellants' Motion to Correct Name of Party is reversed with direction that the Complaint be corrected to name Edwin W. Shearburn, Jr. as defendant instead of Edwin W. Shearburn, III. The record is remanded for further proceedings.

---

DISSENTING OPINION BY JUDGE WILKINSON, JR.:

The test for determining whether a party may amend his pleadings to alter the designation of the defendant below after the running of the statute of limitations is whether the right party is sued under the wrong name, in which case a correction is allowed. *Saracina v. Cotoia,* 417 Pa. 80, 208 A.2d 764 (1965). In the instant case the wrong party was sued. The amendment which the majority allows is not a change of name but the substitution of a distinct party not involved in the suit until after the time limits for the cause of action expired.

Here, unlike *Wright v. Eureka Tempered Copper Company,* 206 Pa. 274, 55 A. 978 (1903), service was not made on the party who is now sought to be included in the case but rather on an entirely different person. Further, the person served answered within

the statute of limitations, correctly stating his lack of involvement in the action alleged. In my opinion, neither the party served, nor the party now sought to be brought into the suit, participated in any deceptive act or performance which misled plaintiffs.

The party here added was not in court in any manner prior to the expiration of the statute of limitations. I do not believe that a new party can be added under these circumstances after the running of the statute and, accordingly, I dissent.